**ST. LOUIS COUNTY TRANSIT COMPANY, a corporation, Plaintiff-Appellant,**

v

**The DIVISION OF EMPLOYMENT SE-CURITY OF DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS of State of Missouri, Industrial Commission of Missouri, and Bi-State Development Agency of the Missouri-Illinois Metropolitan District, Defendants-Respondents.**

**No. 25598.**

Kansas City Court of Appeals, Missouri.

April 5, 1971.

Leyhe, Jacobsmeyer & Meyer, Clayton, by R. W. Jacobsmeyer, Clayton, for plaintiff-appellant.

Curtis K. Cochell, Jefferson City, for Division of Employment Security.

Lloyd G. Poole, Jefferson City, for Industrial Commission.

Guilfoil, Caruthers, Symington, Montrey & Petzall, by Gerhard J. Petzall, St. Louis, for Bi-State Development.

DIXON, Commissioner.

This is an appeal by the St. Louis County Transit Company from a determination of the Division of Employment Security which was affirmed by the Circuit Court of Cole County, Missouri. It reaches us by transfer from the Supreme Court. The liability of St. Louis County Transit Company for unemployment tax under Chapter 288, RSMo 1959, V.A.M.S., is in issue.

For convenience, we will refer to the parties as follows: St. Louis County Transit Company will be referred to as "County," the Bi-State Development Corporation as "Bi-State," the Industrial Commission of Missouri as the "Commission," the Division of Employment Security as "Division," and Transit Service Company will be referred to as "Transit." Reference to the opinion of the Supreme Court, 456 S.W.2d 334, transferring the

case will provide a detailed statement of facts. We summarize these as follows:

County, a Missouri corporation, sold its bus business to Bi-State on April 1, 1963. Bi-State was created under a compact between Illinois and Missouri to operate a metropolitan transportation business in the area of St. Louis. Bi-State employed Transit to operate the bus system.

Under the sale agreement, Bi-State assumed the labor contracts and County's obligation to provide services. The employees of County became employees of Transit, the operating agency of Bi-State. County, on the date of sale, retained a small amount of property and two employees, its President and his Secretary, and continued to operate a small gasoline brokerage business. These activities were expanded so that by the time of the hearing before the Appeals Referee County again employed approximately eighteen people and had a substantial monthly payroll. County had made contributions to the Employment Security Fund of the State of Missouri; and on April 1, 1963, the date of sale, its "account" was in excess of $95,-000.

Against this factual background, the following proceedings have occurred. On May 31, 1963, a deputy of the Division determined that County's business had been transferred and that Transit should succeed to the account of County. This decision was appealed and reversed by the Appeals Tribunal of the Division, No. E–67–63, on January 6, 1965. Thereafter, and on April 26, 1965, a few days short of one year and eleven months later, another deputy determined that Bi-State should stand in the position of County in all respects under Section 288.110, RSMo 1959, V.A.M.S. This second determination was reported to County under letter of April 26, 1965, which specifically referred to the prior determination stating that:

"Based on evidence taken by the Appeals referee * * * Bi-State Development

Agency of the Missouri-Illinois Metropolitan District acquired your business on April 1, 1963.

In view of the findings of the Appeals referee, Bi-State Development Agency of the Missouri-Illinois Metropolitan District would stand in your position in all respects as provided in the Missouri Employment Security Law.

It is determined that Bi-State Development Agency of the Missouri-Illinois Metropolitan District shall stand in your position effective April 1, 1963, in all respects as provided in Section 288.110, RSMo 1959 [V.A.M.S.]."

This determination was appealed by County to the Appeals Tribunal under No. E–30–65, Account No. 08966–1. This "account" number was the "account" of County referred to above.

At the Appeals Tribunal hearing, the account number of County was verified as 08966 and was the subject matter of the determination to be made by the Appeals Tribunal. County was unsuccessful before the Appeals Tribunal, before the Industrial Commission, and before the Circuit Court. The Circuit Court did not receive any additional evidence, but determined the matter as a question of law upon briefs and suggested findings of fact.

County, in the Circuit Court, filed a motion to complete the record for judicial review requesting that the decision and proceedings in Appeals Tribunal E–67–63 affirmed by order of the Industrial Commission CR–449 be included in the record in the Circuit Court. That motion was denied.

It is conceded Bi-State may not be required to pay contributions because the services performed for Bi-State fall in the category of excluded services. Transit Service Company, which actually is employing the former employees of County, has been finally determined not to be the successor to County. Thus, under the rulings made, County pays more tax; and no one obtains the benefit of the account.

The findings of the Appeals Tribunal, so far as relevant here, were that Bi-State had acquired substantially all of the business of County and that such business was continued without interruption solely by Bi-State. Therefore, under Section 288.110 RSMo 1959, V.A.M.S., Bi-State stood in the position of the predecessor employer, County, in all respects, including the separate "account" of County. Union-May-Stern Company v. Industrial Commission of Missouri et al., Mo.App., 273 S.W.2d 766, was cited by the Appeals Tribunal as authority.

County contends, however, that because of the nature of Bi-State, Section 288.110 RSMo 1959, V.A.M.S., can have no application. Its argument is that Bi-State, being a creature of the statutes, Sections 70.-370–70.440 RSMo 1959, V.A.M.S., is an instrumentality of, or political subdivision, of the State of Missouri with the same tax status as that of a city. As such, it would not be liable for current or delinquent contributions; therefore, it cannot be the successor. The parties urge that this question is an original one, not only within the State of Missouri, but within the United States, and must be decided on this appeal. We do not agree. This case turns on another point, and it is not necessary to decide this interesting question.

We believe this case turns on the appropriate construction to be given to Section 288.130(3), RSMo 1959, V.A.M.S. This subsection is as follows:

A deputy shall make an *ex parte* determination after investigation but without hearing with respect to any matter pertaining to the liability of an employing unit which does not involve a claimant. The deputy shall promptly notify any interested employing units of each such determination and the reason for it. The division shall grant a hearing before

an appeals tribunal to any employing unit appealing from any such *ex parte* determination provided an appeal is filed in writing within fourteen days following the date of notification or the mailing of such determination to the party's last known address. In the absence of an appeal any such determination shall become final at the expiration of a fourteen day period. The deputy may, however, at any time within a year from the date of his determination, for good cause, reconsider the determination and shall promptly notify all interested employing units of his amended determination and the reason for it.

County has contended throughout the proceedings that the determination of the deputy of the Division of April 26, 1965, as affirmed by the appeals tribunal, the Industrial Commission, and the circuit court, was not lawfully rendered because the deputy was without jurisdiction to make the determination. County argues, first, that the decision of the deputy of April 26, 1965 was a redetermination of the May 31, 1963 administrative determination. They point out more than one year has elapsed between these administrative decisions and that, therefore, the language "within a year" in the last sentence of 288.130(3) applies, and the deputy was without jurisdiction.

We agree with the first portion of County's contention, that a redetermination is involved. The word "determination" in the statute applies to "any matter pertaining to the liability of an employing unit which does not involve a claimant," and in the last sentence of subparagraph 3, the language "reconsider the determination" must refer to that same determination defined in the first sentence of the subparagraph. On the facts of this case, the deputy on May 31, 1963 was determining the tax liability of an employer, to-wit: County, this because County unquestionably continued some business operations and, like the predecessor employer in Union-May-Stern, supra, would have become liable for the payment of the tax required by this chapter. Likewise, the deputy's decision on April 26, 1965, specifically refers to and relies upon the facts set forth in the original determination when finally determined at the appellate level. The only interested party in both determinations was County.

In discussing the second portion of County's argument, its claim that the deputy was without jurisdiction because more than one year had elapsed after the original determination, we think it important to note the legislative history of this section.

Prior to 1941, the predecessor section of § 288.130 RSMo 1959, V.A.M.S., did not contain any specific language permitting the redetermination of an administrative ruling without an appeal.[1] It provided only that the Commission should have authority to administer the act and to determine its authority and organization. Based upon that general language, the Commission sought to assert the right to reconsider its administrative decisions. This assertion of authority by the Commission reached the Supreme Court of Missouri in Peerless Fixture Co. v. Keitel, 355 Mo. 144, 195 S.W.2d 449. The employer, Peerless Fixture Co., had by an application to the Commission requested that its liability under the act be terminated for the year 1939 which was granted. Subsequently, the Commission discovered its acquiescence was not warranted and imposed liability on the company for the 1939 tax. The company contended that the Commission was without authority to redetermine the question. The Supreme Court agreed, reasoning that the power attempted to be asserted was not necessary to the functions and duties of the Commission. The court declined to consider the effect of the 1941 amendment to the act pointing out that it was not enacted nor effective until July 1,

---

1.   Section 9426(a) Mo.R.S.A.1939, Laws of 1937, paragraph 5, p. 580.

1941, after the operative facts had occurred.

The Laws of 1941, p. 566, 586, Section 3(3d), referred to in Peerless, supra, added the following language to the section (now 288.130 RSMo 1959, V.A.M.S.): "Any determination or decision made hereunder may be reopened or reconsidered when the Commission finds such action is essential to promote the accomplishment of the objectives of this law."

This statutory language reached the courts for construction in Howell v. Division et al., 240 Mo.App., 931, 222 S.W.2d 953. The employer had, like Peerless, requested termination of coverage which was granted. Two years later, the matter was redetermined adversely to the employer. The court reversed on the grounds that the Commission had failed to make a finding that such action was essential to promote the objectives of the law and that the first sentence of the section required notice and hearing which was not afforded until after the redetermination had been made.

In 1943, the statute was again amended to remove the requirement of notice and hearing, but the Commission retained the right to redetermine when essential to accomplish the objectives of the act. Section 9432A Mo.R.S.A.1939, Laws of 1943, p. 939, Section 7.

Section 288.130(3), as it now exists, was enacted in 1951 and has not been construed by the courts. Laws of 1951, p. 588.

It is apparent to us from the legislative history and the cases interpreting the prior revisions of the statute, which we may consider in connection with a determination of legislative intent, that the legislative intent was to provide for an administrative redetermination only. By this we mean that we do not believe that the right to administrative redetermination was intended to be broad enough to permit such redetermination after appeal taken. The language of the last sentence supports this reasoning as well as the legislative history. "The deputy may, however, at any time within a year from the date of *his* determination, for good cause, *reconsider the determination* * * *."* (Emphasis supplied.) Logically and grammatically, "the determination" can only have reference to the language "his determination" and not to a subsequent decision by an appeals tribunal. Reference to Section 288.190 V.A. M.S.1959 will demonstrate that the word "determination" has been used exclusively by the legislature to refer to the *ex parte* administrative ruling and that after an appeal within the administrative process has been taken, the legislature has referred to the adjudication as a "decision." It is plain from an examination of Section 288.190 relating to administrative appeals on disputed determinations that the statutory scheme for the administrative procedure to determine contested matters under the Employment Security Act does not envision a redetermination once an appeal has been taken, there being a complete mechanism afforded by that section, Section 288.200 and Section 288.210 for the complete and final review of the original *ex parte* administrative determination. It does not comport with common sense to assume that the administrative officer could redetermine questions which were either in the process of appeal or which had been finally determined on appeal as was the case with respect to the administrative determination of May 31, 1963, even though such redetermination is made within one year. We, therefore, hold that the right to redetermination set forth in the last sentence of Section 288.130 is a right to administrative redetermination absent an appeal, and that when an appeal is taken from the original *ex parte* determination, it may not be redetermined at the administrative level but must be adjudicated within the appellate procedures provided by the sections cited above.

It is to be noted that under the facts of this case, it was certainly within the power

of the appeals tribunal under 288.190(3) to "* * * affirm, modify, or reverse the determination of the deputy, or * * * remand the matter to the deputy with directions." Those charged with the enforcement of this act had the opportunity within the processes set forth by the legislature to have reversed the determination of the deputy made originally and, within the plain language of the last cited section, remanded the matter to him with directions to make another administrative determination consistent with their findings. Having failed to follow the plain process afforded by the statutes, we cannot affirm their action. This judgment below is therefore reversed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of DIXON, C., is adopted as the opinion of the Court.

All concur.