**LAKE OZARK CONSTRUCTION INDUSTRIES, INC.,**
Appellant,

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION, and Division of Employment Security, Respondents.**

No. WD 47196.

Missouri Court of Appeals,
Western District.

Nov. 23, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 28, 1993.

Application to Transfer Denied
Feb. 22, 1994.

John D. Dunbar, Kansas City, Thomas D. Vaughn, Jefferson City, for appellant.

Victorine Robben Mahon, Jefferson City, For Labor & Indus. Relations Com'n.

Ninion S. Riley, Jefferson City, for Division of Employment Sec.

Before BRECKENRIDGE, P.J., and KENNEDY and LOWENSTEIN, JJ.

KENNEDY, Judge.

Lake Ozark Construction Industries,. Inc., appeals the trial court's dismissal of its appeal from a determination of the Labor and Industrial Relations Commission that it was the successor in business to Oursbourn Enterprises, Inc. For reasons herein explained, we affirm.

The Commission determined that Lake Ozark was the successor in business to Oursbourn. Lake Ozark had purchased a substantial part of the assets and good will of

the asphalt paving business of Oursbourn.[1] The effect of the Commission's decision that Lake Ozark was the successor in business to Oursbourn, under the provisions of section 288.110, RSMo 1986[2], was that the purchasing Lake Ozark succeeded to the selling Oursbourn's employment security account. Taking over the Oursbourn account was disadvantageous to Lake Ozark, because of a large ($143,034.55) deficit in the Oursbourn account, and because of Oursbourn's 5.58 percent contribution rate for 1990. If Lake Ozark was not required to make employment security contributions at Oursbourn's 5.6 percent rate, its contribution rate would be a much lower 2.6 percent.

Through the administrative appeal route of sections 288.130.3 and 288.200, Lake Ozark resisted the determination that it was Oursbourn's successor in business. When the Commission finally decided the issue adversely to it, Lake Ozark Construction sought judicial review of the Commission's decision. Section 288.210.

The Circuit Court of Cole County, upon the Commission's motion, dismissed Lake Ozark's appeal. The court's ground for dismissing the appeal was that the selling Oursbourn had not been made a party to the appeal, and, since Oursbourn was an essential party, the court had no jurisdiction of the appeal.

Was the selling Oursbourn a necessary party to the appeal, as the trial court held? The controlling statute says that, in a judicial review proceeding (which it describes as an "action ... against the commission"), there shall be joined as a defendant "any other party to or having been notified of the proceeding before the commission...." Section 288.210.

If Oursbourn is a necessary party to the appeal, then the joinder of Oursbourn is mandatory and jurisdictional, and the failure to join it as a party to the appeal is fatal to Lake Ozark's appeal. *Duzer v. Industrial Comm'n,* 402 S.W.2d 616, 618 (Mo.App.1966); Section 288.210.

Did Oursbourn have such an interest in the case as would sustain its interest as a party to the Commission proceeding? Lake Ozark claims it did not, and that it was, therefore, not a necessary party to the appeal. Lake Ozark argues that the deputy's original decision that Lake Ozark was successor in business to Oursbourn, was actually two separate decisions—one decision in Lake Ozark's case, that it had succeeded to the Oursbourn employment security account, and one decision in Oursbourn's case, that it had been relieved of the same account. Lake Ozark then reasons that the Oursbourn decision—i.e., that Lake Ozark had succeeded to its account, and Oursbourn had been relieved of it— became final when Oursbourn did not appeal therefrom within the 15–day appeal period. Since Oursbourn could no longer be held to retain the account, the argument runs, Oursbourn had nothing to gain or lose from the decision in the judicial review proceeding in the Lake Ozark case. If Lake Ozark were to be held on appeal not to be Oursbourn's successor in business, Lake Ozark argues, still the account could not be returned to Oursbourn. The general employment security account, in that case, would simply have to absorb the loss. Oursbourn, in other words, lost its status as a party 15 days after the deputy's initial determination when it, Oursbourn, did not appeal the determination.

We have concluded, however, that the Commission is correct when it argues, to the contrary, that the decision that Lake Ozark was the successor in business to Oursbourn, and had succeeded to the Oursbourn account, was a single non-severable decision, affecting both Lake Ozark and Oursbourn. The finality of the decision could be postponed by an appeal taken by either of the parties, or both.

Section 288.130.3 reads, in part, as follows:

A deputy shall make an ex parte determination after investigation but without hearing with respect to any matter pertaining to the liability of an employing unit which does not involve a claimant. The

---

1. Before the sale to Lake Ozark Construction, Oursbourn Enterprises was named Lake Asphalt Paving, Inc. We use the name of Oursbourn throughout this opinion.

2. All statutory references are to RSMo 1986, unless otherwise noted.

deputy shall promptly notify *any interested employing units* of each such determination and the reason for it. The division shall grant a hearing before an appeals tribunal to any employing unit appealing from any such ex parte determination. . . . *In the absence of an appeal* any such determination shall become final. . . . The deputy may, however, . . . reconsider the determination and shall promptly notify *all interested employing units* of his amended determination and the reason for it. (Emphasis added).

When Lake Ozark appealed, the finality of the decision was postponed until the appeal was disposed of, both as to Lake Ozark and as to Oursbourn. Should it have been determined, at some step of the appeal, that Lake Ozark was not (as it maintains) the successor in business of Oursbourn, the account would simply remain with Oursbourn as its account.

In this case, the deputy's initial decision as to Lake Ozark's successorship was favorable to the seller, Oursbourn. Oursbourn was relieved of, and Lake Ozark succeeded to, an unfavorable account. Lake Ozark's argument, that the deputy's decision became final as to Oursbourn when Oursbourn did not appeal, means that every decision with respect to successorship would become final as to the party for whom the decision was favorable. A party would never appeal a favorable decision. He would simply wait for the appeal period to pass, and his favorable decision would be invulnerable. An appeal by the other party, the losing party, would have no consequences for him.

The procedure for determination of successorship in business under section 288.130.3, with the resultant placement of a favorable or an unfavorable account with the seller, on the one hand, or with the buyer on the other hand, is by its nature an adversary proceeding between buyer and seller. See, e.g., *Acton Corp. v. Labor and Industrial Relations Comm'n*, 602 S.W.2d 53 (Mo.App.1980); *KSD/KSD–TV, Inc. v. Labor and Industrial Relations Comm'n*, 562 S.W.2d 346 (Mo. banc 1978); *St. Louis County Transit Co. v. Div. of Employment Sec.*, 466 S.W.2d 198 (Mo.App.1971); *Union–May–Stern Co. v. Industrial Comm'n of Missouri*, 273 S.W.2d 766 (Mo.App.1954). In many cases, of course, the seller's account, unlike the seller's account in this case, is a favorable account. See, e.g., *Acton Corp.*, 602 S.W.2d at 53. In those cases, the buyer is seeking to have the account transferred to him, and the seller is seeking to retain it. In both types of cases, the decision may have significant financial impact.

The language of section 288.130.3 which we have underlined above bears out the idea that the decision with respect to successorship in business is a single, non-severable decision, affecting both the seller and the buyer, both of whom are parties to the proceeding. When the statute says that the determination of successorship in business shall become final "in the absence of an appeal," it is plainly implied that an appeal by any party suspends the finality of the determination.

Oursbourn was a party to the successorship determination proceeding from the initial determination by the deputy, throughout the proceeding, and until the proceeding left the Commission's domain and entered the reviewing circuit court by way of appeal. While Oursbourn did not participate in any hearing, the record shows it was notified of the successive appeal proceedings within the Commission. Oursbourn could not, and did not, lose its status as a party by its passivity.

The trial court, because of the failure to join Oursbourn as a party to the appeal, was without jurisdiction of the appeal, and correctly dismissed the appeal on the Commission's motion.

Judgment affirmed.

All concur.