**UNION–MAY–STERN COMPANY,**
Appellant,

v.

**INDUSTRIAL COMMISSION OF MIS-
SOURI, Division of Employment Security,
and Carson-Union-May-Stern Company, a
Corporation, Respondents.**

No. 22098.

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1954.

Burnett, Stern & Liberman, St. Louis, for appellant.

Lloyd G. Poole, George Schwartz, Howard L. McFadden, Jefferson City, for respondent Division of Employment Security Industrial Commission of Missouri. Max Sigaloff, for Carson-Union-May-Stern Co.

BROADDUS, Judge.

This is an appeal from the judgment of the Circuit Court of Cole County affirming a decision of the Industrial Commission. The question to be determined is whether the respondent, Carson-Union-May-Stern Company is a "successor" to

appellant, Union-May-Stern Company, within the provisions of the Missouri Employment Security Law, Sect. 288.110, V.A.M.S.

Here is how the question arose. On November 17, 1952, the Division of Employment Security notified appellant, Union-May-Stern Company, that its account with the Division was being transferred as of May 24, 1952, to the respondent, Carson-Union-May-Stern Company, as successor, and that its successor, Carson-Union-May-Stern Company, should stand in the position of appellant, in all respects, under the provisions of the Missouri Employment Security Law, V.A.M.S. § 288.010 et seq. At the time of the transfer the contribution rate of appellant was 0.2%.

On the same date, November 17, 1952, the Division notified appellant that it had established liability as a new employer under the Act as it was subject to the Federal Unemployment Tax Act, 26 U.S.C.A. § 1600 et seq. for the current year. Sect. 288.030, subd. 14(7), V.A.M.S. The contribution rate as a new employer was established at 2.7%.

On November 18, 1952, appellant protested, requesting a hearing and reconsideration. A hearing was held before an Appeals Tribunal of the Division of Employment Security in St. Louis on March 24, 1953. On April 14, 1953, the Appeals Tribunal entered its decision holding that respondent, Carson-Union-May-Stern Company, should stand in the position of its predecessor, the appellant Union-May-Stern Company, in all respects under the provisions of Sect. 288.110, V.A.M.S. Appellant made timely application for review to the Industrial Commission. The Commission denied appellant's application. Whereupon appellant presented its Petition for Review to the court below. The latter, as we have stated, affirmed the decision of the Industrial Commission.

The findings of fact made by the Appeals Tribunal (Honorable Peter A. May) are supported by the record. They are:

"For a number of years prior to May 23, 1952, Union-May-Stern Company, a corporation, the appellant, was engaged in the retail furniture business in St. Louis, Missouri. It sold both new and used house furnishings. Most of the furniture was sold on the installment plan. The corporation had three stores and a warehouse. Its office and one of its stores were located at Twelfth & Olive Streets, in the City of St. Louis, Missouri. J. D. Carson Company, Inc., hereinafter referred to as the Carson Co., was engaged in a similar business at 1016 Olive Street, St. Louis, Missouri.

"On May 23, 1952, the Carson Co. purchased from the appellant its good will, all of its fixtures and furniture, and its stock of house furnishings. The Carson Co. also assumed leases which the appellant had on buildings which it occupied. The Carson Co. was permitted to use the name 'Carson-Union-May-Stern'. The assets transferred were valued at approximately $700,000. The appellant retained its accounts receivable valued at $1,800,-000; insurance policies valued at $200,-000; stocks and bonds of other corporations valued at $500,000; and from $200,000 to $300,000 in cash.

"Immediately prior to the sale the appellant had from 280 to 300 workers. It retained 60 of these workers and used them in collecting its accounts receivable. The appellant has not sold any furniture since May 23, 1952, and has not financed any furniture purchases. At the time of the hearing the accounts receivable had been reduced to about $300,000. The number of employees had dropped to 20. The Carson Co. offered work to all of the employees not retained by the appellant, and all but about 35 accepted the offer. Immediately after the transfer the Carson Co. moved its office to the store at Twelfth & Olive Streets. It continued the appellant's retail furniture business without interruption.

"The Referee finds that the Carson-Union-May-Stern Company ac-

quired substantially all of the business of Union-May-Stern Company on May 23, 1952, and that immediately after such a change the business of the predecessor was continued without interruption by the successor. The appellant was engaged in the business of selling house furnishings at retail and financing the purchases. This business was acquired by the Carson Co. The fact that the assets retained by the appellant exceeded those transferred is not controlling. These assets, including the accounts receivable, were not an essential part of the business and would not have been of particular value to the purchaser in the continuation of the business."

The material part of Section 288.110, is as follows:

"Any individual, type of organization or employing unit which has acquired substantially all of the business of an employer, excepting in any such case any assets retained by such employer incident to the liquidation of his obligations, and in respect to which the division finds that immediately after such change such business of the predecessor employer is continued without interruption solely by the successor, shall stand in the position of such predecessor employer in all respects, including the predecessor's separate account, actual contribution and benefit experience, annual payrolls, and liability for current or delinquent contributions, interest and penalties."

The phrase "substantially all of the business" was not in the section pertaining to transfers of accounts prior to July 1951. The transfer section prior to that date read: "Any individual, firm, corporation or employing unit which acquires the organization, trade, or business, or all of the assets thereof, of an employer * * *." R.S.1949, § 288.060.

■ The rules governing the scope of judicial review in cases of this sort are the same as those applicable in workmen's compensation cases. Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647; Meyer v. Industrial Commission, 240 Mo. App. 1022, 223 S.W.2d 835. In the latter case the St. Louis Court of Appeals stated, loc. cit. 839:

"It was stated by this court in Moore v. International Shoe Co., Mo.App., 213 S.W.2d 215, 220, that the court upon review '* * * is authorized to determine, upon the whole record, whether the Industrial Commission could reasonably have made its findings and reached its result. * * * This does not mean that we are to arrive at our conclusion solely upon a review of the whole evidence and with a total disregard of the fact that the Commission made its final award in favor of the employee, and thereby substitute our judgment on the evidence for that of the administrative tribunal. It is our duty to decide from the whole of the evidence whether the Commission could have reasonably found in favor of the employee as it did. We are not to set aside that finding unless it was clearly contrary to the overwhelming weight of the evidence.' Williams v. International Shoe Co., Mo.App., 213 S.W.2d 657. These cited cases deal with Workmen's Compensation but the same rule applies to the review of Unemployment Compensation cases as the Constitution of Missouri, 1945, Art. V, Sec. 22, Mo. R.S.A., is applicable to both."

■ The Court also reaffirmed the rule that where the triers of fact have reached one of two possible conclusions from the evidence, the Court may not substitute its contrary conclusion even if it can be said that such conclusion might have been reasonably reached.

■ Based chiefly upon the fact that appellant retained its accounts receivable it contends that: "The assets retained by appellant were substantial in amount and nature. If a greater portion is retained by the predecessor than is acquired by the successor, how can it reasonably be argued that

the (purported) successor acquired 'substantially all of the business' of appellant?" Such an argument is based upon the assumption that the words "assets" and "business", as used in the section of the statute under discussion, have the same meaning. If the Legislature had intended that the acquisition of "substantially all the assets" would be the guide as to when transfers of accounts should occur, it would have plainly so indicated by using such words. By eliminating in 1951 the phrase "acquires the organization, trade, or business, or all of the assets thereof" and substituting therefor the phrase, "acquired substantially all of the business", it is apparent that the Legislature no longer desired that such a phrase be used as the test. Under such circumstances, we do not think it can be reasonably argued that a transfer of account will occur only when there is an acquisition of substantially all the assets.

What was the business of appellant? Was it a life insurance business, or investment business, or a business of buying and collecting accounts receivable? The facts establish that the *primary and principal activity* of the appellant was the sale of home furnishings at retail. And the record bears out the finding of the Referee that: "The appellant has not sold any furniture since May 23, 1952, and has not financed any furniture purchases."

It is well to refer to certain testimony given by Mr. Fihn, an officer of the Carson Company. He stated: "The deal was that we were to buy outright all of the merchandise, everything as a going business." He was asked:

"Q. And where is the place of business of Carson-Union-May-Stern Company located now? A. In the buildings, all of the buildings that Union-May-Stern were using; that is, the same warehouse, the same retail stores, everything right in there. In other words, the business wasn't interrupted at all. One day it closed as Union-May-Stern, the next day it opened up as Carson-Union-May-Stern with the same employees and everybody operated just the same as they did before."

Later on in his testimony the following appears:

"The way the thing is being presented is quite contradictory to the facts. The first thing, Mr. Wiseman in making his deal with me wanted to get the corporation liquidated, Union-May-Stern, and get out of it as quickly as he could. In other words, it is being presented as if Union-May-Stern is a going business and it is to die as soon as they can collect the accounts receivable and liquidate. In other words, the picture is not being presented. They are just collecting trying to liquidate as quickly as they can and not continue as a going business at all. That was a definite understanding".

Appellant cites the case of South Side Chevrolet Co. of St. Louis v. Industrial Commission, 240 Mo.App. 1215, 226 S.W.2d 733, a decision by this court. The facts in that case are entirely different from those in the instant case. In the Chevrolet case, the facts show that a two-way partnership operated at different locations two separate businesses, an automobile agency under the name of South Side Chevrolet Company and a wholesale auto parts under the name of Wholesale Auto Parts. A four-way partnership acquired the automobile agency only. The Wholesale Auto Parts continued to operate, buying and selling auto parts, which was its regular business. It was not liquidated, nor did it cease operations. We held that the evidence supported the finding of the Commission that the four-way partnership did not acquire the organization, trade or all of the assets of the two-way partnership. The instant case is distinguished from the Chevrolet case by the fact that the two-way partnership continued to operate as usual the business known as Wholesale Auto Parts, while the primary and principal business activity of the present appellant was disposed of completely. With the sale of the inventory, fixtures, etc., appellant ceased the financing of new accounts. On May 23, 1952, the accounts receivable belonging to appellant amounted to about $1,800,000. At the time of the hearing before the Referee on March 24,

1953, the accounts receivable had been reduced to about $320,000. During this same period of time, the appellant had reduced the number of employees from 60 to 22. In the Chevrolet case, you had a "going" business left after the sale of the automobile agency, while in the instant case a "liquidating" organization remained.

The case of Auclair Transportation, Inc., v. Riley, 96 N.H. 1, 69 A.2d 861, also cited by appellant, has a factual situation similar to the South Side Chevrolet case. The employer operated a filling station, an interstate motor vehicle trucking company, and had rental property. The rental property was not considered as a business by the court. The employer sold the trucking business, which had a book value of about $34,000, but did not dispose of the filling station valued at $4,200. The court properly held that the corporation which acquired the trucking business did not qualify under the statute as a successor.

The case of Harris v. Egan, 135 Conn. 102, 60 A.2d 922, 924, 4 A.L.R.2d 717, deals directly with the question before us. In that case, in January, 1946, the plaintiffs opened a feed and grain business in a warehouse in Wallingford. They were not subject to the Unemployment Compensation Act. Raymond Delaney was engaged in a similar business under the name of "Delaneys" and was subject to the Act. On April 22, 1946, the plaintiffs agreed with Delaney to buy the land and buildings where he operated his business, all the machinery and equipment located therein, all his automotive equipment, his saleable merchandise on hand on May 5, the day prior to the date set for the consummation of the sale, and the good will of the business. The sale was completed on May 6, and the plaintiffs paid $27,800 of which $27,000 was for the real estate, and $800 for the merchandise. Delaney retained only his accounts receivable and his accounts payable, each item amounting to about $15,000, his business records and minor items of office equipment. The plaintiffs moved their own merchandise of the value of about $10,000, into the property acquired from Delaney, and had conducted business there since the date of the sale. Delaney removed his business

records and office equipment and thereafter did not engage in business except for a period of about five months, during which time he made sales from railroad cars. The name "Delaneys" was discontinued. The plaintiffs employed one former employee of Delaney for about a week in order that they might learn to operate a machine which was included in the sale. The Court said:

"Delaney sold to the plaintiffs the land and buildings where he operated his business, all the machinery and equipment located therein, all his automotive equipment, all his merchandise and stock in trade, and the good will of the business. The plaintiffs moved in, added their own merchandise and continued the same business though under another form. Upon its face, this seemingly complete acquisition of Delaney's business by the plaintiffs appears to bring them within the provisions of the statute and to make them a liable employer. *The only substantial question is whether Delaney's retention of his accounts receivable and payable makes the statute inapplicable.* The act says 'substantially all.' We have said that 'The word "substantially" * * * is a term of some elasticity * * *; its significance is relative, necessarily relating to the purpose' of the provision in which it is used. Loglisci v. Liquor Control Commission, 123 Conn. 31, 37, 192 A. 260, 263; see also In re Temtor Corn & Fruit Products Co., D.C., 299 F. 326, 331. It does not indicate a definite, fixed amount of percentage but is an elastic term which must be construed according to the facts of the particular case. United States v. Whyel, D.C., 19 F.2d 260, 262. *In applying the statute, a prime question in determining whether substantially all of the assets, the organization or the trade or business was taken over is: Did the acquisition result in a substantial continuation of the same or a like business?*

"Whether the plaintiffs did take over substantially all of the assets or business of Delaney was a question of fact to be determined primarily by the de-

fendant administrator. See Chinigo v. Ehrenberg, 112 Conn. 381, 384, 152 A. 305; United States v. Whyel, supra. The question for the trial court was whether his conclusion was illegal or unreasonable.

"It must be conceded that from an accounting viewpoint the accounts receivable and the accounts payable constituted a part of Delaney's assets. *However, they were of no particular value to the buyers in the continuation of the business.* As we have pointed out, the act cannot be restricted to assets, and the test is: Did the plaintiffs acquire substantially all of the assets or business of Delaney? Upon the facts of the case, the administrator could decide that they did, and the trial court was not in error in dismissing the appeal." (Emphasis supplied.)

The Connecticut law regarding transfers of accounts and which governed the foregoing decision provides for transfer of accounts where there is an acquisition of "substantially all of the assets, organization, trade or business of another employer who at the time of such acquisition was subject to the act." Gen.St.Supp.Conn.1941, § 710f.

■ The factual situation in the Harris case and in the instant case is similar. In each case there was a sale of good will, inventory, fixtures, and in one case real estate and in the other a transfer of leases. There was a continuity of the acquired business. There was a retention of accounts receivable. As shown above the Connecticut Court held that the proposition of whether there was an acquisition of substantially all of the assets or the business of Delaney was a question of fact to be determined primarily by the administrator.

■ And we too hold that under the evidence in the present record the Industrial Commission could reasonably have made its findings and reached its result. It follows that the judgment of the learned trial court should be affirmed. It is so ordered.

All concur.