**MASCOM MANAGEMENT, INC.,**
**Petitioner-Appellant,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION, State of Missouri, et al., Division of Employment Security, State of Missouri, et al., Respondents.**

**No. KCD30288.**

Missouri Court of Appeals,
Western District.

Sept. 4, 1979.

Francis L. Kenney, III, Clayton, for petitioner-appellant.

Rick V. Morris, Larry R. Ruhmann, Jefferson City, for Division of Employment Sec.

D. J. Chatfield, Jefferson City, for Labor and Industrial Relations Commission.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

DIXON, Presiding Judge.

Mascom Management, Inc., appeals from a decision of the Circuit Court of Cole County affirming a finding and decision of the Labor and Industrial Relations Commission that Mascom is the successor to Washington and Twelfth Corporation (Washington and Twelfth) and, therefore, liable for all delinquent employer contributions and future contributions at the rate which Washington and Twelfth was scheduled to pay pursuant to § 288.110 RSMo 1969.

The evidence presenting the factual basis for the appeal is without dispute. Mascom operates property under leases and other arrangements nationwide. Since June 25, 1976, it has operated premises known as the Downtowner Motor Inn pursuant to a lease executed on July 13, 1976, with U. S. Realty Investment, the fee owner of the premises.

Prior to Mascom leasing the premises, the owner, U. S. Realty, had leased the Downtowner Motor Inn to Washington and Twelfth. There had been financial problems resulting in a delinquency of rental payments to U. S. Realty from Washington and Twelfth. In February of 1976, a notice of default was sent to Washington and Twelfth by U. S. Realty and a surrender of the premises was achieved on June 25, 1976. This surrender by Washington and Twelfth was not only of the lease but also personal property—apparently furniture and beds.

Mascom took over possession of the Downtowner Motor Inn on June 25, 1976. The hotel itself remained open during this change of management period, but it was necessary for Mascom to expend money for what are described as "soft goods," pillows, towels, and blankets, in order to keep the premises operating. None of this was purchased from the prior lessee, Washington and Twelfth. The bar and lounge were shut down while Mascom obtained a new liquor license. Some forty (40) employees of Washington and Twelfth were hired by Mascom beginning June 26, but they were not paid by Mascom for work performed by them prior to that date. These employees were apparently never paid for the work prior to Mascom's commencement of operation. It is agreed by all parties that Mascom did not have any contact or connection with the prior lessee, Washington and Twelfth, Mascom never negotiated or contracted with them, did not assume any of

the accounts payable of Washington and Twelfth, did not take any assignment of accounts receivable by them, nor did Mascom assume any of the liabilities of the Washington and Twelfth Corporation. In addition, the evidence demonstrates that a claim was filed by a sublessee of Washington and Twelfth against Mascom. Mascom pursued all available remedies to oust the sublessee from possession of the premises.

In connection with the leasing of the premises, Mascom hired as its comptroller for the hotel, David Paschal, who had been the comptroller for the prior lessee, Washington and Twelfth. Paschal, on July 26, 1976, executed on behalf of Mascom form MODES–2699 entitled "Report on Employment Experience." Item 10 of the form and the answers included by Paschal read as follows:

> If you acquired a business or part of a business since January 1, 1976, enter the date acquired 6/25/76 and show the name and address of predecessor Washington and Twelfth Corporation, 070244–2–096– 7011, 1133 Washington, St. Louis, Missouri 63101. (A) Did you continue without interruption substantially all business activities of your predecessor in Missouri. Yes

Paschal testified that at the time he filled in the form he did not discuss the information with anyone from Mascom nor was he aware of the terms of its lease with U. S. Realty.

On September 10, 1976, Mascom received notice of liability and transfer of predecessor's account to successor from the Division of Employment Security, State of Missouri. Mascom requested a reconsideration of this determination or, alternatively, a hearing before the Appeals Tribunal of the Division. Reconsideration was denied, and the appeal was heard by the referee on January 25, 1977. On March 15, 1977, the Appeals Tribunal held Mascom was the successor of Washington and Twelfth under § 288.110 RSMo 1969. This statute provides in pertinent part:

> "Any individual, type of organization or employing unit which has acquired substantially all of the business of an employer, excepting in any such case any assets retained by such employer incident to the liquidation of his obligations, and in respect to which the division finds that immediately after such change such business of the predecessor employer is continued without interruption solely by the successor, shall stand in the position of such predecessor employer in all respects, including the predecessor's separate account, actual contribution and benefit experience, annual payrolls, and liability for current or delinquent contributions, interest and penalties. . . . "

An application to the Division for review of the decision of the Appeals Tribunal was denied on September 23, 1977. The Labor and Industrial Relations Commission affirmed the Appeals Tribunal. The circuit court affirmed the decision from which circuit court order Mascom makes this timely appeal.

The scope of review by this court must first be noted. When there is no dispute in the evidence concerning the facts and the issue is the construction and application of the statute to the virtually uncontroverted facts, the issue is one of law. *Chief Freight Lines Co. v. Industrial Commission*, 366 S.W.2d 48, 51 (Mo.App.1963). If the decision of the Industrial Commission rests upon an erroneous conclusion of law, this court is not bound by the decision below but should reverse. *Belle State Bank v. Industrial Commission*, 547 S.W.2d 841, 844 (Mo.App.1977).

Section 288.110 RSMo 1978, the relevant portions of which are set forth above, was amended by the Laws of 1951, p. 564, *et seq.* That amendment removed from the statute the language relating to substantially all the assets and substituted the language substantially all the business. This amendment undoubtedly was a reaction by the legislature to difficulties in the interpretation of the prior language which arose when, in the course of the transfer, substantial assets were withheld from the transfer, but the business entity continued.

Thus, before addressing the contentions of the parties, it is appropriate to undertake some review of the cases interpreting the statute since the 1951 amendment. In *Union-May-Stern Company v. Industrial Commission*, 273 S.W.2d 766 (Mo.App.1954), the court held that the evidence supported a finding that "substantially all of the business" of the predecessor had been acquired by a successor, even though the predecessor had retained the major portion measured by value of its assets. Upon that basis, the predecessor company was determined to be a new employer in the management and liquidation of the assets retained and, as a consequence, charged the higher rate of contribution. Important to the decision in *Union-May-Stern* was the acquisition by the successor of the assets necessary to continue the "business" of the predecessor. The assets retained by the predecessor were accounts receivable, cash, stocks and bonds, the predecessor operating no part of the previous business of selling home furnishings but primarily operating to liquidate the accounts receivable. The Industrial Commission in the instant case urges that *Union-May-Stern* stands for the proposition that the "statute speaks of acquiring business and not assets." That proposition is much too broad. The *Union-May-Stern* case, in the context of the facts presented, holds that the acquisition of a "going business" and the assets necessary to continue the business gives rise to the successorship of the acquiring entity under § 288.110 RSMo 1978.

Two other cases bear on the resolution of the issue here presented. In *Chief Freight Lines v. Industrial Commission, supra*, the court was confronted with the claim by Chief Freight Lines that it was not a successor. The basis for the contention was that Chief Freight Lines had leased the permits and equipment of another truck line, operated it for some period of time, and then did not exercise an option to purchase because the application for a permanent authority as a common carrier was denied by the regulatory agency. Chief Freight Lines urged that they had not "acquired" the business of the predecessor.

The court determined that Chief Freight Lines had acquired the "business" and was the successor. The court's rationale was that despite the "lease" format of the transaction the Chief Freight Line was the "beneficial owner" of the "business" with possession of all its assets and the unrestricted right to manage and control the business, hiring and firing employees, paying its debts, and retaining all revenues. The court in *Chief Freight Lines* did assert that "acquire" as used in the statute was a word of broad meaning and was not limited to acquisition of title. The rationale of the case, however, is that Chief had assumed the burdens and received all the benefits arising from the business of the predecessor.

The word acquire was also considered in the context of its use in § 288.110 by the Supreme Court of Missouri in *KSD/KSD–TV Inc. v. Labor and Industrial Relations*, 562 S.W.2d 346 (Mo. banc 1978). The court held that KSD/KSD–TV, a wholly owned subsidiary of Pulitzer Publishing became the successor to Pulitzer when it continued to operate in the corporate form a portion of the "business" of Pulitzer prior to the creation of the subsidiary, the remainder of the "business" being a continuation by Pulitzer of its prior activities.

The court pointed out that the parties were agreed that the transaction did not come within the meaning of the first sentence of § 288.110 since KSD/KSD–TV did not acquire substantially all of the business of Pulitzer. Under the second sentence of § 288.110, the Commission argued that Pulitzer did not "acquire" from anyone the publishing portion of the business and, therefore, there were not two entities which had "acquired" the business of a single entity. Conceding that a literal interpretation would require the Commission's position to be adopted, the court nonetheless held KSD/KSD–TV was a "successor." In so holding, the court looked to the relationships existing before the creation of the subsidiary and to those existing thereafter concluding that the only reasonable result was to find in favor of KSD/KSD–TV being a successor.

Upon the basis of the authority discussed above, the difficult issue in the instant case is to apply the language of § 288.110 to the conceded facts in this case.

*Chief Freight Lines, supra,* and *Union-May-Stern, supra,* recognize that it was the intent of the legislature to provide a different standard for the determination of successorship under the 1951 amendment of § 288.110. The legislative intent as expressed in the rationale of those cases was to avoid a mechanical application of the statute based upon the technicality of the manner of acquisition of the assets transferred. *KSD/KSD–TV* recognizes that the nature of the assets retained or transferred and the manner of acquisition will be considered in a realistic way so as not to produce an unreasonable result. The cited cases find a legislative intent to make the question of successorship turn upon the actuality of a transfer of benefits and burdens of a prior business operation so that the successorship provisions of the statute as to accounts, delinquencies, and rates will be applied equitably under all the circumstances of each case.

Thus, in *Chief Freight Lines,* the court addressed the meaning of the word "acquired" in the light of the benefits to the proposed successor and the burdens that it undertook with respect to the transfer, the court finding that having acquired all the benefits and assumed all the burdens of the prior business operation, the transferee acquired, within the statutory language, the business of the transferor.

So also in *Union-May-Stern,* the court addressed the question of what was acquired by the transferee and considering the benefits and the burdens assumed by the transferee as being substantially those of the "business" rejected the claim of the transferor that no succession should take place. The same rationale is applied to the second sentence of the statute in *KSD/KSD–TV, supra.* The court there disregarded the literal meaning of the statute in order to arrive at a just and equitable result when the transferee and the transferor had assumed all of the benefits and burdens of the prior business enterprise by dividing into two separate entities despite the lack of any direct transfer of a portion of the business.

■ Such an analysis of the statutory language is particularly appropriate when the statute is considered in the light of its purposes. On the one hand, the statute protects the basic integrity of the employment security system by providing a means of collection of delinquent accounts when the business enterprise is ongoing and the benefits and burdens have been assumed by another. So likewise, when the shoe is on the other foot and the transferee is asserting a right to the lower rate established by the transferor, if the transferee has assumed the benefits and burdens of the prior operation in whatever form and however conveyed, it is equitable and in furtherance of the statutory purpose to stabilize conditions of employment to permit the transferee to obtain the lower rate of contribution and any value in the predecessor's account. This is done for the reason that the whole purpose of the system is to provide continuity and stability of employment. The incentive to a transferee, to continue uninterrupted and without decrease in employment the enterprise transferred, is the expectation of the lowered rate of contribution. Put another way, interpretation of the statute which emphasizes the necessity for stability in employment and the protection of the State's interest in collection of delinquent accounts, and which is based upon a realistic appraisal of the business situation, accomplishes the basic legislative goals.

■ Turning now to the contentions of the parties, it is the contention of Mascom that it is not a successor within the meaning of the statute because it did not acquire any assets from Washington and Twelfth, did not assume any burdens of the operation, and did not derive any benefits from Washington and Twelfth. The most that can be said to the contrary is that Mascom operated a similar business in the same premises. The Commission, on the other hand, argues that the "business" of Wash-

ington and Twelfth was the operation of a hotel business at the described location. This, the Industrial Commission contends, was "acquired" and continued by Mascom without interruption. Therefore, Mascom is a "successor" under the statute and liable for both the rate imposed on Washington and Twelfth as well as the existing deficiency.

To bolster this argument, the Industrial Commission cites *Chief Freight Lines, supra*, particularly the definitional language of acquire, "to gain by any means . . . to get as one's own." The Industrial Commission then asserts that *Union-May-Stern*, in its definition of "substantially all the business," eliminated any consideration of the transfer of assets in determining whether there was an acquisition of "substantially all of the business."

What has been heretofore stated with respect to the analysis of *Chief Freight Lines* and *Union-May-Stern* refutes this argument of the Commission. When the transfer of the benefits and burdens of the prior operation is considered, Mascom received absolutely no benefit from the prior operation by way of assets, either tangible or intangible. The only physical assets used in the continuation of the business were freshly acquired from third parties. A new lease arrangement between the landlord and the successor company is admitted. Whatever benefits arise from the new operation result from the infusion of these new assets and the assumption by the successor of burdens that were not those of the predecessor but independent obligations not acquired from the predecessor. The burden of the lease held by the predecessor has been extinguished by operation of law and, absent the new enterprise of the successor, the prior operation was at a complete end.

Put in terms of the underlying purposes of the statute, at the point when the lease had been terminated and the operation for all practical purposes of Washington and Twelfth stopped, the state had no right to look to anyone for the collection of its delinquent account except Washington and Twelfth. Likewise, absent an assumption of the burdens of that operation and the prospective benefits, no one could have claimed the right to a favorable rate had one existed. What has occurred in the instant case is that a new enterprise has been undertaken with fresh assets to operate a similar business in the same location. This has had the effect of continuing the employment of the employees of the old enterprise, but that salutary end should not be burdened by saddling the new enterprise with the debts of the old enterprise. It is obvious from the factual background of this case that if a new entrepreneur entering the picture was concerned that a deficiency would be imposed, it would be relatively simple to defeat the claim of the state by interrupting the operation so as to avoid there being a continuous operation. The only losers in that situation would be the employees, whose employment would be lost, and the Industrial Commission due to benefits for unemployment that would accrue to those employees. Realistically viewed and giving the statute a reasonable construction, it must be held as a matter of law that upon these facts Mascom did not acquire the business of Washington and Twelfth.

The judgment of the circuit court is reversed; the cause is remanded to the circuit court with directions to remand the case to the Industrial Relations Commission with directions to enter an order that appellant Mascom Management, Inc., is not a successor to the Washington and Twelfth Corporation within the meaning of § 288.110 RSMo 1978.

All concur.