**DIVISION OF EMPLOYMENT SECURITY, Appellant,**

v.

**TANEY COUNTY DISTRICT R–III, et al., Respondents.**

No. 78506.

Supreme Court of Missouri, En Banc.

April 23, 1996.

Marilyn Gail Green, Jefferson City, Missouri, for appellant.

Victorine R. Mahon, Labor and Industrial Relations Commission, Jefferson City, Missouri, Emory L. Melton, Cassville, Missouri, for respondents.

BENTON, Judge.

The Labor and Industrial Relations Commission ruled that Taney County School District R–III is not a successor to Cedar Creek District R–VII under the Employment Security Law. The Division of Employment Security appealed to the circuit court of Cole County, which affirmed. Following opinion by the court of appeals, this Court granted transfer. *Mo. Const. Art. V, § 10.* Reversed.

## I.

On August 28, 1992, the State Board of Education determined that the corporate organization of Cedar Creek School District had lapsed by § 162.081.1 RSMo Supp.1992:[1]

> Whenever any school district in this state fails or refuses in any school year to provide for the minimum school term required by section 163.021, RSMo, its corporate organization shall lapse and the territory theretofore embraced within the lapsed district or any portion thereof, shall be attached to any adjoining district for school purposes by the state board of education.

The state board attached the lapsed territory to the Taney County R–III School District ["Taney County"].

Prior to August 28, 1992, Cedar Creek employed four full-time teachers, one part-time teacher, three or four bus drivers, one cafeteria worker, one secretary, a part-time custodian, and a principal. The district educated 85 kindergarten through eighth grade students but sent its high school students to adjoining school districts, primarily to Taney County.

After August 28, 1992, Taney County offered employment to three of Cedar Creek's teachers, as well as its secretary, cafeteria worker and one bus driver. The principal received no offer because he was not certified to teach Missouri subjects and could not be hired. The three teachers accepted positions; the secretary, cafeteria worker and bus driver rejected Taney County's offer because its pay scale was lower than Cedar

---

1. Unless otherwise noted, all statutory citations are to RSMo1986 as supplemented by RSMo

Creek's.[2]

On January 28, 1993, the Division notified Taney County that under § 288.110, it was Cedar Creek's successor and would stand in Cedar Creek's position for purposes of the Employment Security Law. After a hearing, the appeals tribunal affirmed this determination. The Labor and Industrial Relations Commission reversed, finding that Taney County was not a successor to Cedar Creek.

## II.

■ An appellate court reviews the decision of the Commission, not the judgment of the circuit court. *Burns v. Labor & Indust. Rel. Com'n,* 845 S.W.2d 553, 554 (Mo. banc 1993). This Court is not bound by the Commission's conclusions of law, nor its application of the law to the facts. *See* § 288.210 RSMo Supp.1995. *See also Wagner v. Unemploy. Comp. Com'n,* 355 Mo. 805, 198 S.W.2d 342, 345 (1947); *Haynes v. Unemploy. Comp. Com'n,* 353 Mo. 540, 183 S.W.2d 77 (1944); *Mascom Management, Inc. v. Labor and Indust. Rel. Com'n,* 586 S.W.2d 802, 804 (Mo.App.1979). Where there is no factual dispute, and the issue is the construction and application of the statute to virtually uncontroverted facts, the issue is one of law. *Mascom Management,* 586 S.W.2d at 804; *Chief Freight Lines Co. v. Labor and Industrial Commission,* 366 S.W.2d 48, 51 (Mo.App.1963).

## III.

■ At common law, when an entire school district was absorbed by another district, the surviving district was responsible for the predecessor's liabilities, including obligations to teachers. *Thompson v. Abbott,* 61 Mo. 176, 177 (Mo.1875). *See also Lynch v. Webb City School Dist. No. 92,* 373 S.W.2d 193, 200 (Mo.App.1963); *McClure v. Princeton Re–Organized School Dist. R–5,* 307 S.W.2d 726, 728 (Mo.App.1957).

The Commission ruled that chapter 162 RSMo exclusively governs the disposition of a lapsed school district's assets and liabilities. On appeal, however, the Commission now concedes that chapter 162 does not address a lapsed district's assets or liabilities. As to liability for unemployment benefits, all the parties now focus on a statute, § 288.110:

> Any individual, type of organization or employing unit which has acquired substantially all of the business of an employer ... and in respect to which the division finds that immediately after such change such business of the predecessor employer is continued without interruption solely by the successor, shall stand in the position of such predecessor employer in all respects, including the predecessor's separate account, actual contribution and benefit experience, annual payrolls, and liability for current or delinquent contributions, interest and penalties.

### A.

■ The Commission ruled that § 288.110 does not apply to involuntary acquisitions, interpreting "acquired" as encompassing only voluntary acquisitions. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Wolff Shoe Co. v. Dir. of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). The language of § 288.110 nowhere includes the word "voluntary" or any synonym. Therefore, any voluntariness requirement must arise from the word "acquired" itself. Because "acquired" is not defined in the Employment Security Law, this Court must look to its plain and ordinary meaning. *Id.*

The term "acquire" is one of broad import. *Chief Freight,* 366 S.W.2d at 53. It is defined as:

> to come into possession, control or power of disposal of[,] often by some uncertain or unspecified means

*Webster's Third New Int'l Dictionary* 18 (1976). The appeals tribunal, the court of appeals, and the parties focus on *Black's Law Dictionary:*

Supp.1992.

---

**2.** This Court expresses no opinion on the merits of individual employees' claims for unemployment compensation.

To gain by any means, usually by one's own exertions; *to get as one's own;* to obtain by search, endeavor, investment, practice, or purchase; *receive or gain in whatever manner; come to have.* In law of contracts and of descents, to become owner of property; to make property one's own. *To gain ownership of.*

p. 24 (6th ed.1990) (emphasis added). True, some of the *Black's* definitions assume voluntary action. Equally, however, the *Webster's* definition and the italicized *Black's* definitions clearly encompass the involuntary receipt of property.

By the public policy of Missouri, economic insecurity due to unemployment is a serious menace to the state's welfare. *§ 288.020.1.* The Employment Security Law "shall be liberally construed" to promote job security and unemployment compensation. *§ 288.020.2.* The word "acquired" should not be interpreted in a restrictive manner that would eliminate much of its accepted meaning without promoting either job security or the payment of unemployment compensation. *Cf. KSD/ KSD–TV, Inc. v. Labor & Indus. Rel. Com'n,* 562 S.W.2d 346, 349 (Mo. banc 1978). The ordinary meaning of "acquire" includes: "to come into possession, control, or power of disposal of, often by some uncertain or unspecified means." The General Assembly's words in § 288.110 do not require "voluntary" acquisition. This Court will not read such a requirement into the statute.

### B.

■ The Commission alternatively interpreted § 288.110 as requiring that an entity acquire substantially all of the *assets* of the predecessor. The statute requires the acquisition of "substantially all of the *business* " of a predecessor. § 288.110 (emphasis added). As the Division notes, the Commission's interpretation of § 288.110 presumes that "business" and "assets" are synonymous. To the contrary, in 1951, the General Assembly specifically removed the very phrase the Commission now reads into the statute. In 1951, the legislature repealed the phrase "acquires the organization, trade, or business, or *all of the assets* thereof, of an employer." 1951 Mo. Laws 587. It substituted: "ac-

quired *substantially* all *of the business* of an employer." *Compare* § 288.060.5 RSMo1949 with § 288.110 (emphasis added). By eliminating the phrase "all of the assets," the General Assembly clearly rejected that phrase as the test. *Union–May–Stern Co. v. Industrial Comm.,* 273 S.W.2d 766, 769 (Mo. App.1954). The percentage of assets acquired is a relevant factor in determining whether a successor acquired "substantially all" of the business of its predecessor, but it is not the only factor.

■ The key is, first, to determine the business of the predecessor. The Commission argues that a school district is not a "business." However, § 288.110 requires only that a predecessor be an "employer"— defined to include any "governmental entity," "individual," "type of organization," or "employing unit." *See* §§ 288.032 & 288.034. Thus, the Employment Security Law clearly applies to school districts. The issue is not whether a particular employer is a commercial business, but whether a particular employer *has* business. While "business" has many meanings, in the context of § 288.110, it means: "an activity engaged in as normal, logical, or inevitable and usually extending over a considerable period of time: ROLE, FUNCTION." *Webster's Third New Int'l Dictionary* 302; *cf. Black's Law Dictionary* 198.

The business of Cedar Creek was educating students. Taney County acquired the entire Cedar Creek student body, entitling it to additional state aid based on the number of students within the district. *See* § 163.031. Taney County also received the entire Cedar Creek tax base, which was then subject to the higher Taney County rate. Taney County additionally gained its predecessor's four buses, classroom furniture, teaching materials, and other personal property, including at least one certificate of deposit used to pay off a bus. In fact, the only asset Taney County did not receive was Cedar Creek's school building, which was deeded to the local fire district.

Thus, the remaining question is whether the nonacquisition of the school building defeats application of § 288.110. The statute says "substantially all." The term "substan-

tially" does not indicate a definite, fixed percentage but is elastic and must be construed according to the facts of a particular case. *See Union–May–Stern,* 273 S.W.2d at 770 (quoting *Harris v. Egan,* 135 Conn. 102, 60 A.2d 922, 924 (1948)). Once the Cedar Creek district lapsed and the students were moved to the Taney County school in Forsyth, the Cedar Creek building necessarily became less important to educating Cedar Creek's students. While the record does not show why the building was deeded to the fire district, it also does not indicate that Taney County ever requested the building, objected to its disposition, or claimed to need it. There is thus no evidence that the building had any value in continuing the business of educating Cedar Creek's students. Because Taney County acquired Cedar Creek's students, its revenue, and its personal property, Taney County clearly acquired "substantially all" of Cedar Creek's business.

### IV.

 As a defense, Taney County argues that holding it liable for a predecessor's unpaid contributions is an unfunded state mandate in violation of Article X, § 21 of the Missouri Constitution. However, Taney County introduced no specific facts to support such a contention. A constitutional question must be raised at the earliest possible opportunity, otherwise it is waived. *City of Chesterfield v. Director of Revenue,* 811 S.W.2d 375, 378 (Mo. banc 1991); *Union Electric Co. v. Director of Revenue,* 799 S.W.2d 78, 80 (Mo. banc 1990); *Citizens Electric Corp. v. Director of Revenue,* 766 S.W.2d 450, 452 (Mo. banc 1989). Hancock claims require a specific factual showing of both an increased level of activity required by the State, and increased costs in performing that activity. *See Miller v. Director of Revenue,* 719 S.W.2d 787, 788–89 (Mo. banc 1986); *City of Jefferson v. Missouri Dep't Nat. Resources,* 863 S.W.2d 844, 848 (Mo. banc 1993); *City of Jefferson v. Missouri Dep't Nat. Resources,* 916 S.W.2d 794, 795 (Mo. banc 1996). This Court cannot review a Hancock claim where the record before the Commission has no evidence of any unfunded increased costs.

### V.

This Court finds that under § 288.110, Taney County District R–III is a successor to Cedar Creek District R–VII for purposes of the Employment Security Law. The judgment of the circuit court affirming the decision of the Commission is reversed and the case remanded for proceedings consistent with this opinion.

All concur.