**LANDMARK INDUSTRIES OF ILLINOIS, INC.,**
Appellant,

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 52382.**

Missouri Court of Appeals, Western District.

Submitted Oct. 17, 1996.

Decided April 8, 1997.

Keith W. Brunstrom, Jefferson City, for appellant.

Ronnae L. Coleman, Mo. Div. of Employment Security, Kansas City, for respondent.

Before SMART, P.J., and SPINDEN and ELLIS, JJ.

PER CURIAM.

Landmark Industries of Illinois, Inc. ("Landmark") appeals a determination of the Labor and Industrial Relations Commission ("Commission") finding Landmark to be a successor company to K–Way Camping Products, Inc. ("K–Way") pursuant to § 288.110, RSMo 1994.[1] Landmark contends that the Commission erred, as a matter of law, in affirming the Division of Employment Security's ("Division") determination that Landmark acquired and immediately continued substantially all of the business of a prior employer, K–Way. Landmark claims that this determination is against the weight of the evidence. The judgment of the Commission is affirmed.

## STANDARD OF REVIEW

 Review is governed by Section 288.210, RSMo Supp.1996, which provides, in pertinent part:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

We are not bound by the Commission's conclusions of law or the Commission's application of law to the facts. Where there is no dispute as to the facts and the issue is one of application and construction of a statute to these facts, the issue is one of law. *Division of Employment Sec. v. Taney County Dist. R–III*, 922 S.W.2d 391, 393 (Mo. banc 1996). We may not, however, substitute our judgment for that of the Commission on factual determinations. *Travelers Equities Sales, Inc. v. Division of Employment Sec.*, 927 S.W.2d 912, 916–17 (Mo.App.1996).

 In determining whether the Commission's findings are supported by competent and substantial evidence, we employ a two-step process. This court, in *Davis v. Research Medical Ctr.*, 903 S.W.2d 557, 571 (Mo.App.1995), outlined the process for review of an award made by the Commission in worker's compensation decisions. In *Travelers Equities Sales* we held that the *Davis* standard was applicable to employment security decisions as well. *Travelers Equities Sales*, 927 S.W.2d at 917. Review is a two-step process. First, an appellate court must determine whether the whole record, viewed in the light most favorable to the decision, contains sufficient competent and substantial evidence to support the Commission's decision. *Davis*, 903 S.W.2d at 571. If it does, the court, in the second step, makes a determination as to whether the decision is against the overwhelming weight of the evidence. *Id.* In this second step, the reviewing court considers all of the evidence in the record, including that not favorable to the decision. *Id.*

## FACTUAL BACKGROUND

K–Way operated a manufacturing plant in Lebanon, Missouri. K–Way manufactured boat interiors which K–Way sold to original equipment manufacturers. This was about 75% of K–Way's business. The other 25% was contract production of items such as cushions and vests. K–Way employed 33 people at the time it transferred its assets to Landmark.

Landmark, which operated in Illinois, wanted to expand its capability to manufacture sleeper components for tractors. Landmark also wished to expand its business of manufacturing boat interiors. Landmark and K–Way agreed that, effective October 3, 1994, Landmark would purchase the production assets and real estate of K–Way. Landmark paid approximately $750,000 for K–Way's building, $100,000 for its equipment,

---

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

and $170,000 for its inventory. Landmark also employed all of K–Way's employees.

Immediately after the sale of assets, Landmark continued K–Way's business. In the period of time since October 3, 1994, Landmark has invested approximately $450,000 in new equipment, and converted the manufacturing process from an older sit-down sewing process to a much newer stand-up process. Landmark has also changed the marketing of its production. As of August 31, 1995, Landmark has expanded the boat interior and sleeper component lines to constitute 94.5% of the production from the old K–Way plant. Only about 3.7% of Landmark's sales from the old K–Way plant are made to K–Way's old customers.

The Division determined that Landmark was a successor corporation to K–Way as defined in § 288.110, RSMo Supp.1996. As a successor corporation, Landmark was responsible for its predecessor's account, actual contribution and benefit experience, annual payrolls, and liable for current or delinquent contributions. Because of K–Way's unfavorable experience rating, the ruling that Landmark is a successor means that Landmark will be required to pay higher taxes to the Division than it would as an entirely new enterprise. Landmark sought review of this decision. A hearing was held on November 1, 1995. The appeals referee affirmed the decision of the Division and found that Landmark was a successor corporation. As a result of the referee's decision, Landmark filed an application for review with the Commission. The Commission affirmed the referee's decision and adopted its findings and conclusions. It also filed a supplemental opinion. In its supplemental opinion, the Commission acknowledged that the case was a close one. It ruled, however, that the fact that Landmark chose to modernize the manufacturing process and eliminate some of the business established by K–Way did not alter the fact that on the date of the sale, Landmark received tangible and intangible assets from K–Way which amounted to substantially all of the K–Way business. Landmark appeals.

## SUCCESSOR LIABILITY

The issue in this case is whether, pursuant to § 288.110, Landmark is a successor corporation to K–Way. The relevant portion of § 288.110 provides:

Any individual, type of organization or employing unit which has acquired substantially all of the business of an employer, excepting in such case any assets retained by such employer incident to the liquidation of his obligations, and in respect to which the division finds that immediately after such change such business of the predecessor employer is continued without interruption solely by the successor, shall stand in the position of such predecessor employer in all respects, including the predecessor's separate account, actual contribution and benefit experience, annual payrolls, and liability for current or delinquent contributions, interest and penalties.

We must, therefore, examine (1) whether Landmark acquired substantially all of K–Way's business and (2) whether that business was continued without interruption. Landmark argues that the Commission's interpretation of the statute defeats the purpose of the statute. It also argues that it did not acquire substantially all of K–Way's business nor did it immediately continue the business of K–Way.

### A. Public Policy

The public policy of Missouri, as stated in § 288.020.1, is that "[e]conomic insecurity due to unemployment is a serious menace to health, morals, and welfare of the people...." The law dealing with employment security is, therefore, to be liberally construed in order to accomplish its stated purpose of promoting employment security "by increasing opportunities for jobs" and "by providing for the payment of compensation to individuals in respect to their unemployment." § 288.020.2, RSMo 1994. Landmark claims that application of § 288.110 to designate it as a successor company would defeat the purpose of promoting employment in Missouri because it penalizes Landmark, which has increased employment opportunities in Missouri, by charging it with a higher

employment contribution rate. Landmark asserts that the law as applied to the facts of this case constitute a taxing statute. Landmark reminds us that tax laws are to be strictly construed against the taxing authority. While it is true that tax laws are generally strictly construed against a taxing authority, the tax provisions of the employment security law, are "incidental to its paramount and remedial purpose of relief. . . ." *Sample & Sell, Inc. v. Labor & Indus. Relations Comm'n,* 764 S.W.2d 109, 111 (Mo.App.1988).

We are not unsympathetic to the argument that a business such as Landmark should not be penalized for taking a struggling business and making it more productive, as opposed to starting up a wholly separate business from scratch. However, we also recognize that Landmark's argument, if adopted, would substantially undermine the whole concept of a successor employer. The concept of successor liability is based upon the notion that a company which takes over a going business receives certain benefits which would not have accrued to that business if there had not been a company previously existing. Because of the close connection between the new and the old, it is not unjust to treat the new ownership according to the experience rating of the old. Also, the likelihood of being assigned an adverse experience rating can be factored into the negotiations over the purchase price of the business so that some of the cost of the adverse rating may be shifted back to the former owner.

**B. Landmark Acquired Substantially All of K–Way**

■ Landmark argues that it did not acquire substantially all of the assets of K–Way because it acquired only 87.5% of K–Way's inventory and did not acquire K–Way's accounts receivable. Landmark cites *South Side Chevrolet Co. v. Industrial Comm'n,* 240 Mo.App. 1215, 226 S.W.2d 733, 735 (1950) for the proposition that a company will not be deemed a successor company unless it acquires "the organization, trade, business or all of the assets of its predecessor." However, *South Side Chevrolet* was decided before the substitution of the word "business" for the word "assets" in the stat-

ute in 1951. *Taney,* 922 S.W.2d at 394. The test is not whether Landmark acquired substantially all of K–Way's assets, the test is whether Landmark acquired substantially all of K–Way's business. *Id.* Percentage of total assets acquired is not the key factor in the determination of whether a successor acquired substantially all of the business. *Id.* Furthermore, the term "substantial" does not indicate a formulaic construct with a fixed percentage triggering successor liability but instead must remain an elastic concept construed according to the facts of each particular case. *Id.* Generally, it is the *productive* assets, rather than just the total assets, which are significant.

In *Union–May–Stern Co. v. Industrial Comm'n,* 273 S.W.2d 766, 767 (Mo.App.1954), Union–May–Stern, a corporation engaged in the retail furniture business, sold its good will, fixtures and furniture and stock of house furnishings to Carson Co. The value of the assets transferred was approximately $700,-000.00. Union–May–Stern retained its accounts receivable ($1,800,000.00), insurance policies ($200,000.00), stocks and bonds ($500,000.00), and cash ($200,000.00 to $300,-000.00). *Id.* The court held that the evidence supported a finding that Carson Company had acquired substantially all of Union–May–Stern's business. Critical to the court's decision was the acquisition by the successor of the productive assets necessary to continue the predecessor's business.

In *Acton Corp. v. Labor & Indus. Relations Comm'n,* 602 S.W.2d 53 (Mo.App.1980), the determination of whether or not successor liability attached turned on whether the acquiring entity took possession of a going business with the assets necessary for that business to continue. In *Acton,* appellant bought the snack food division of Sunshine Biscuit Company. After the sale was complete, the division's 150 employees continued in their jobs without interruption. The court held that the acquisition of a division of the predecessor did not constitute a partial sale. The court explained that the stated purpose of § 288.110 is to provide employment security and that its purpose was fulfilled as the evidence showed that 150 employees of Sunshine on one day were employees of appel-

lant the following day, "fully employed and fully protected by the rate of taxation assessed against the predecessor/employer." *Id.* at 57.

■ Landmark acquired the manufacturing building, plant equipment, real estate, and most of K–Way's inventory. Although the obsolete inventory, house and automobiles may have constituted a portion of K–Way's assets, they were not productive assets. Landmark acquired a going business with all of the assets necessary to the continuation of that business.

Landmark relies upon *Mascom Management, Inc. v. Labor & Indus. Relations Comm'n*, 586 S.W.2d 802 (Mo.App.1979), in support of its position, claiming that the case is parallel with its own situation. The appellant in *Mascom* leased real property for a motel from a prior lessee, but did not acquire any tangible or intangible assets from the prior lessee. Also, a new lease was entered into with the property owner after the lease was terminated due to default. The *Mascom* court held that there was no successor liability. The court found that Mascom was not a successor, basing its decision on the fact that Mascom received "absolutely no benefit" from the assets of the prior operation, tangible or intangible. *Id.* at 807. Moreover, "[t]he only physical assets used in the continuation of the business were freshly acquired from third parties." *Id.* The *Mascom* court reasoned that "whatever benefits arise from the new operation result from the infusion of these new assets and the assumption by the successor of burdens that were not those of the predecessor but independent obligations not acquired from the predecessor." *Id.* The court determined that the most that could be said was that Mascom operated a similar business on the same premises. This was not enough to make Mascom a successor corporation. *Id.* Landmark's circumstances are not comparable. By contrast, Landmark received not only productive tangible assets from K–Way, but also stepped into K–Way's shoes with full authority to continue K–Way's business to whatever extent it desired. It is true that one of Landmark's main purposes in acquiring K–Way's assets *was* to increase its manufacture of sleeper components for

tractors (which was not a market pursued by K–Way), but an additional purpose was to expand its marine interior product line (furniture for boats), which both K–Way and Landmark had been involved in. Thus, we conclude the Commission could reasonably decide that Landmark *acquired* substantially all of K–Way's business, even though it may not have chosen to continue over time much of K–Way's business.

### C. Landmark Continued the Business of K–Way without Interruption

We turn to the separate but related question of whether Landmark, under § 288.110, immediately continued K–Way's business without interruption. Landmark argues that it did not continue K–Way's business because it did not continue any part of K–Way's wholesale, retail, or custom work, which had amounted to approximately 25% of K–Way's business. Thus, Landmark argues that it continued only the manufacture of items for sale to original equipment manufacturers, which amounted to about 75% of K–Way's business.

In *Union–May–Stern*, the court made inquiry into what constituted the business of the appellant. It looked at the "primary and principal activity" of the appellant. *Union–May–Stern*, 273 S.W.2d at 769. K–Way was principally and primarily engaged in the production and manufacture of boat interiors; 75% of its business involved the manufacturing of items for marketing to original equipment manufacturers.

K-Way closed its business on Friday afternoon, September 30, 1994. Landmark immediately continued production, using the same equipment and personnel used by K–Way, beginning early the following Monday, October 3, 1994. When the Division's investigator visited the plant after the change in ownership, he noted that the former K–Way employees were engaged in the same type of work as they had been for K–Way. Although there were indications that Landmark was going to modernize the business, no substantive changes had occurred. The investigator saw no signs of new construction. Because Landmark had purchased K–Way's inventory, it is reasonable to assume

Landmark would continue to market that inventory as K–Way had done. At the time that the investigator visited the plant, Landmark had not made the changes that Landmark would later make within the next year or two. Landmark's changes to and improvements in the business are not dispositive because they occurred later. It can be misleading to focus on the 25% of K–Way's business which Landmark chose to discontinue. It did not discontinue the work because of its contract with K–Way, or for any reason other than that in the course of time it chose not to continue that part of K–Way's business for reasons ultimately related to efficiency and profitability. Even though Landmark eventually discontinued twenty-five percent of K–Way's business, it acquired substantially all of K–Way's business. It continued that business immediately after the transfer, and it was only later that Landmark's business began to look substantially different from K–Way's. We hold, under the facts of this particular case, that Landmark continued the business of K–Way without interruption immediately after the sale of assets.

Judgment is affirmed.