JUSTICE COMMITTEE FOR THE CITIZENS OF POPLAR BLUFF, an unincorporated association, David Logsdon, Individually, and as representative member of the Committee, and Doris King, as representative member of the Committee, Plaintiffs–Appellants,

v.

CITY OF POPLAR BLUFF, City of Poplar Bluff Clerk William Pettet, and Butler County Clerk John Dunivan, Defendants–Respondents.

No. 22584.

Missouri Court of Appeals,
Southern District,
Division Two.

April 30, 1999.

Jeffrey P. Hine, Osburn, Hine, Kuntze & Yates, L.L.C., Cape Girardeau, for Appellants.

Wallace L. Duncan, Duncan & White, Poplar Bluff, for Respondents.

SHRUM, Presiding Judge.

Appellants are part of a group that submitted written objections to a proposed voluntary annexation of two tracts of land to the City of Poplar Bluff, Missouri ("City"). The City Clerk found that the written objections were ineffective to stop the annexation because they lacked a sufficient number of valid signatures. Once that decision was made, the City continued with its proposed voluntary annexation of the parcels. Appellants then filed this case against the City, City Clerk, and Butler County Clerk (collectively called "Respondents") seeking to halt the annexations.

Upon Respondents' motion, the court entered summary judgment for Respondents on the basis that the written objections proffered by Appellants did not contain circulators' affidavits. Thus, the question presented on appeal is whether petitions submitted as "written objections" to a voluntary annexation under § 71.012.2(3)[1] must observe certain formalities required of certain other petitions— namely, whether such written objections must contain circulators' affidavits. We answer, "No." We reverse and remand.

## FACTS

In early 1996, the various owners of two unincorporated tracts of land in Butler County, known as "Shadowbrook Subdivision" and "Oak Grove School Property," submitted to the City separate petitions requesting annexation. Subsequently, the City held separate public hearings regarding the voluntary annexation of each tract pursuant to § 71.012.2(1). Following each of the hearings, citizens of the City filed written "petitions" objecting to the annexations. These petitions, though unverified, purportedly contain signatures of more than two percent of qualified voters of the City of Poplar Bluff.

Upon receiving the two petitions, the City Clerk undertook a verification process to determine whether each of the petitions contained valid signatures of "at least two percent of the qualified voters of the city" pursuant to § 71.012.2(3). For a variety of reasons, the City Clerk concluded that neither petition contained the requisite number of verifiable signatures to "constitute a valid objection" under § 71.012.2(3).

Apparently relying on the City Clerk's evaluation and rejection of the petitions, the City proceeded with annexation of both the Shadowbrook Subdivision and the Oak Grove School Property under the voluntary annexation statute, § 71.012, and authorized annexation of both tracts by ordinance. Thereafter, Appellants filed this action seeking various forms of relief. In response, Respondents filed, among other things, a Motion for Summary Judgment. The motion alleged:

"the petitions as submitted to [the City Clerk] were not valid as a matter of law, due to the fact that such petitions are required by statute to contain a Circulator's Affidavit on each page attesting to the fact that the circulator witnessed each signature on the petition, and that each Circulator's Affidavit be subscribed and sworn to before a Notary Public on each page."

The trial court, "after considering the memorandums and argument of counsel and having been fully advised," found that

1. All statutory references are to RSMo Cum. Supp.1997 unless otherwise stated.

Respondents were entitled to judgment as a matter of law. Accordingly, the court entered summary judgment in favor of Respondents.[2] This appeal followed.

## STANDARD OF REVIEW

Appellate review of an entry of summary judgment is essentially *de novo* because "[t]he propriety of summary judgment is purely an issue of law." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[6] (Mo.banc 1993). An appellate court views the record in the light most favorable to the party against whom summary judgment was entered. *Id.* at 376[1].

## DISCUSSION AND DECISION

■ Section 71.012.2(3) provides:

"If a *written objection* to the proposed annexation is filed with the governing body of the city ... not later than fourteen days after the public hearing by at least two percent of the qualified voters of the city, ... the provisions of sections 71.015 and 71.860 to 71.920, shall be followed." (Emphasis added.)

A valid written objection[3] under § 71.012.2(3) effectively converts a voluntary annexation into an involuntary annexation, forcing a city to comply with additional requirements before it may annex the subject property. *See* § 71.015. The involuntary annexation process requires, among other things, that the proposed annexation be submitted to a vote of both the residents of the city and the residents of the land to be annexed. *See* § 71.015.1(6).

■ In their first point, Appellants contend the trial court's entry of summary judgment for Respondents "on the grounds that the petitions submitted as objections to the City of Poplar Bluff's two annexations were invalid for lack of circu-

lators' affidavits" was reversible error. Appellants do not dispute that neither of the "petitions" of objection submitted in this case contained circulators' affidavits. Instead, Appellants assert that § 71.012.2(3) does not require that a "written objection" to annexation take the form of a verified petition and, consequently, that such an objection is not rendered invalid if it does not contain a circulator's affidavit.

■ In opposition, Respondents make a number of observations and arguments. They begin by observing that both of the "written objections" here are denominated, "Petition Objecting to Annexation," and that the persons whose signatures appear on these documents are referred to therein as "Petitioners." Next, Respondents argue that "[t]he purpose of these petitions was to suspend the action of the Poplar Bluff City Council in proceeding with voluntary annexations under Section 71.012 RSMo, and require voter approval before the annexations took effect, pursuant to Section 71.015, RSMo." Respondents then cite *State ex rel. Moore v. Toberman*, 363 Mo. 245, 250 S.W.2d 701 (1952), in which our supreme court stated that the " '[p]urpose of referendum is to suspend or annul a law which has not gone into effect and to provide the people a means of giving expression to a legislative proposition, and require their approval before it becomes operative as a law.' " *Id.* at 706[7] (citation omitted). Thus, Respondents argue that an objection under § 71.012.2(3) is "in the nature of a referendum" and should be treated accordingly. They point out that § 116.030 "clearly spell[s] out what form a petition for referendum must take." Respondents fail, however, to disclose that § 116.030, by its terms, pertains to "refer-

---

2. The City's summary judgment motion did not raise the issue of whether the written objections contained valid signatures of at least two percent of the qualified voters of the city as required by § 71.012.2(3). Consequently, that issue was not decided by the trial court and is not before this court.

3. We use the phrase "valid written objection" to mean written objection or objections by at least two percent of the qualified voters of a city, as contemplated in § 71.012.2(3).

endum petitions on any law *passed by the general assembly of the state of Missouri.*" (Emphasis added.) Respondents cite no authority supporting their contention that § 116.030 applies to a referendum on a city ordinance, nor has our research uncovered any such authority.

Nevertheless, Respondents seem to presume that the very existence of § 116.030 mandates that a "written objection" under § 71.012.2(3)—because it is "in the nature of a referendum"—must be in the form of a petition. Curiously, while Respondents observe that the petition form prescribed in § 116.030 requires a circulator's affidavit, they do not actually argue that the § 116.030 form is the one to be used for § 71.012.2(3) objections. Instead, they note that § 71.012.2(3) does not prescribe a form for a written petition of objection. They then cite § 115.700, which provides that "[w]hen the form of a petition is not provided by law for local issues, the provisions of section 115.019, shall, as far as possible, govern the form of the petition, but not the date of the election." Section 115.019, in turn, sets out a petition form containing a circulator's affidavit. Thus, Respondents contend that a "written objection" to a voluntary annexation under § 71.012 must be in petition form, under § 116.030, and must include a circulator's affidavit, as required in §§ 115.019 and 115.700. Respondents conclude that "Section 115.700 is determinative and the trial court did not err in granting Respondent's Motion for Summary Judgment as the petitions were defective on their face and invalid as a matter of law." We cannot agree.

■ We conclude that a "written objection" under § 71.012.2(3) need not take the form of a verified petition. We base our conclusion on common canons of statutory construction. " 'The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning.' " *Div.*

*of Employment Sec. v. Taney County Dist. R–III,* 922 S.W.2d 391, 393[5] (Mo.banc 1996) (quoting *Wolff Shoe Co. v. Dir. of Revenue,* 762 S.W.2d 29, 31 (Mo.banc 1988)). In its plain and ordinary sense, the phrase "written objection" is very general and does not lend itself to the strained and rigid construction urged by Respondents. Thus, as an initial matter, a plain and ordinary reading of § 71.012.2(3) supports the Appellants' assertion that circulators' affidavits are unnecessary for valid written objections under § 71.012.2(3).

■ Moreover, in ascertaining the legislature's intent, we must read the phrase "written objection" in the context of the entire statute, § 71.012. *See Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 19 (Mo.banc 1995); *Collins v. Director of Revenue,* 691 S.W.2d 246, 251[9] (Mo.banc 1985). In so doing, we find it particularly significant that in subsection (1) of § 71.012.2, the legislature provided: "When a *verified petition,* requesting annexation and signed by the owners of all fee interests of record in all tracts of real property located within the area proposed to be annexed, is presented...." (Emphasis added.) "[T]he legislature's use of different terms in different subsections of the same statute is presumed to be intentional and for a particular purpose." *Armco Steel v. City of Kansas City,* 883 S.W.2d 3, 7 (Mo.banc 1994). We presume, therefore, that the phrase "written objection" means something different than the phrase "verified petition"—a presumption strongly favoring Appellants' position.

We conclude, therefore, that the legislature did not intend to require that an objection to a voluntary annexation take the form of a verified petition. Consequently, the petitions submitted to the City in this case are not invalid for lack of circulators' affidavits. As a result, Respondents were *not* entitled to judgment as a matter of law on that basis, and the trial court erred in entering summary judgment in favor of Respondents. Appel-

lants' first point is granted.[4]   Accordingly, the judgment is reversed and remanded for further proceedings.

MONTGOMERY and BARNEY, JJ., concur.

---

**4.**   Our resolution of Appellants' first point renders their second point moot.   Consequently,   we need not and do not address it.